IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 3M COMPANY, | : |
| Plaintiff, | : Case No. 1:21-cv-04576 |
| v. | : Judge P. Kevin Castel |
| PPE SOLUTIONS GROUP LLC, | : |
| Defendant. | : |

## CONSENT JUDGMENT
## AND PERMANENT INJUNCTION

WHEREAS Defendant PPE Solutions Group LLP ("PPE Solutions") and Plaintiff 3M Company ("3M") (collectively, the "Parties"), have agreed to finally resolve 3M's claims against PPE Solutions in the above-captioned litigation (the "Litigation"), without admission of any facts or liability of any kind as alleged in 3M's Litigation, pursuant to a settlement agreement ("Settlement Agreement") entered into by the parties and attached hereto as Exhibit A;

WHEREAS the resolution of these claims includes any potential claim by 3M for damages and attorneys' fees and costs incurred through entry of this Consent Judgment and Permanent Injunction in connection with the Litigation; and

WHEREAS PPE Solutions and 3M agreed to entry of a Consent Judgment and Permanent Injunction on the following terms, and PPE Solutions agreed not to appeal any part of this stipulated Consent Judgment and Permanent Injunction;

1

NOW THEREFORE IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. Pursuant to the terms of the Settlement Agreement, PPE Solutions is permanently enjoined from:

    a. Using the 3M Marks (as the term "3M Marks" is defined in the Complaint), and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Marks, for, on, and/or in connection with the manufacture, distribution, advertising, promoting, brokering, offering for sale, and/or sale of any goods or services, including, without limitation, 3M's 3M-brand N95 respirators; and

    b. Falsely claiming to be (1) agents, distributors, employees, or contractors of 3M, and/or (2) in any way affiliated with or have a relationship with 3M, its distributors, its legal department, or any 3M employees, regardless of department, in connection with the manufacture, distribution, advertising, promoting, brokering, offering for sale, and/or sale of any goods or services, including, without limitation, 3M's 3M-brand N95 respirators.

2. Pursuant to the terms of the Settlement Agreement, PPE Solutions will destroy or otherwise turn over to the appropriate destruction facilities any masks in its possession in a warehouse in New Jersey and in a second warehouse in Hong Kong. The Parties agree that violation of the Consent Judgment and Permanent

2

Injunction will expose the violating party to all penalties provided by law. The Parties agree not to appeal the Consent Judgment and Permanent Injunction.

3. Any claims for damages and attorneys' fees and costs related to this Litigation and incurred through the date of entry of this Consent Judgment and Permanent Injunction have been resolved between the Parties and are hereby disposed of by this Order. Nothing herein will be construed to any party from seeking to recover its reasonable attorneys' fees and costs in connection with any actions taken to enforce this Consent Judgment and Permanent Injunction in the future. The Parties will not otherwise attack the validity or enforceability of this Consent Judgment or the Settlement Agreement.

4. Entry of this Consent Judgment and Permanent Injunction is binding and resolves the Litigation with respect to the Parties. PPE Solutions has entered into the Settlement Agreement without admitting fault, liability or wrongdoing, thus, the Consent Judgment and Permanent Injunction do not preclude PPE Solutions from contesting liability or other related facts or issues against any other party in any other matter or proceeding.

5. This Court will maintain continuing jurisdiction over this action for the purpose of enforcing this Consent Judgment and Permanent Injunction and Settlement Agreement.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

**SO ORDERED,** this 27th day of June, 2022.

_____
HON. P. KEVIN CASTEL
United States District Judge

The foregoing Consent Judgment and Permanent Injunction has been agreed and consented to by the Parties:

**CONSENTED TO BY:**

_____
GORDON REES SCULLY
MANSUKHANI, LLP
Attorney for Plaintiff
One Battery Park Plaza, 28th Floor
New York, New York 10004
(T) (212) 453-0772
(E) doxamendi@grsm.com


Richard D. Schuster (0022813)
Kara M. Mundy (0091146)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
(T)    614-464-5669
(F)    614-719-4709
(E)    rdschuster@vorys.com
       kmmundy@vorys.com

*Counsel for Plaintiff 3M Company*

_____
Kerry Brainard Verdi, Esq.
VERDI & OGLETREE PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 449-7703
Facsimile: (202) 449-7701
kverdi@verdiogletree.com

Counsel for Defendant PPE Solutions Group

4

## **SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS**

This Settlement Agreement, Mutual Release of all Claims, and Covenant Not to Sue ("Agreement") is entered into effective as of the last date it is signed below ("Effective Date"). This Agreement is between 3M COMPANY, INC. ("3M") and PPE SOLUTIONS GROUP LLC. ("PPE SOLUTIONS"). The above identified persons or entities are sometimes referred to below as a "Party" or designated collectively as "Parties."

## **RECITALS**

A.  WHEREAS, PPE SOLUTIONS is a Wyoming limited liability company, with a principle place of business located at 510 Hamilton Street, Suite 101, Somerset, NJ, 08873; and

B.  WHEREAS, 3M sells personal protective equipment under trademarks such as (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, inter alia, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "'534 Registration") collectively ("the 3M Marks"); and

C.  WHEREAS, PPE SOLUTIONS sold products labeled as 3M™ N95 respirators (collectively "N95 Respirators"); and

D.  WHEREAS, 3M alleged in its complaint that certain N95 Respirators sold by PPE SOLUTIONS were counterfeit;

E.  WHEREAS, on or about May 21, 2021, 3M initiated litigation against PPE SOLUTIONS in the United States District Court, Southern District of New York, Case No.1:21-cv-04576, by filing its Complaint asserting causes of action for trademark counterfeiting and trademark infringement and other state and federal claims ("the LAWSUIT") relating to the sale of products labeled 3M N95 Respirators; and

F.  WHEREAS, PPE SOLUTIONS states that as of the time following the filing of the LAWSUIT, it no longer markets or sells 3M products, and has no intention of marketing or selling 3M products, now or in the future; and

G.  WHEREAS, in order to avoid further expense of litigation, the Parties to this Agreement wish to settle and compromise all existing and potential claims existing between them arising out of and relating to the LAWSUIT.

H.  WHEREAS, the Parties desire to further memorialize their mutually agreeable settlement and resolution of the LAWSUIT; and

I.  WHEREAS, each of the Parties to this Agreement have assented freely and voluntarily to its terms.

## AGREEMENT

NOW, THEREFORE, in consideration of the provisions of this Agreement, which consideration fully and completely satisfies the claims released herein, the Parties, and each of them, agree as follows:

1. <u>Recitals</u>. The foregoing recitals are true and correct and by this reference incorporated herein.

2. <u>PPE SOLUTIONS Refrains</u>. Upon the Effective Date, PPE SOLUTIONS shall not:

   a. Use the 3M Marks, and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Marks, for, on, and/or in connection with the manufacture, distribution, advertising, promoting, brokering, offering for sale, and/or sale of any goods or services, including, without limitation, 3M's 3M-brand N95 respirators,

   b. Sell, trade, possess, move, or conceal any products bearing the 3M Marks, and

   c. Unless such claim is true at the time the claim is made, claim to be (1) agents, distributors, employees, or contractors of 3M, and/or (2) in any way affiliated with or have a relationship with 3M, its distributors, or any 3M Employees, in connection with the manufacture, distribution, advertising, promoting, brokering, offering for sale, and/or sale of any goods or services, including, without limitation, 3M's 3M-brand N95 respirators.

3. <u>PPE SOLUTIONS Promises</u>. PPE SOLUTIONS shall tender to 3M or otherwise turn over to the appropriate destruction facilities or government authoriries any mask or respirator products that are the subject of the LAWSUIT within the possession, custody, and control of PPE SOLUTIONS that bear, feature, and/or contain any copy or colorable imitation of 3M's Marks, which PPE SOLUTIONS agrees to transport to the following facility within 45 days of the execution of this Agreement:

   Dock 45
   Operations 3M St. Paul DC,
   1024 Hazel Street, Building 424-1E-05
   St. Paul, MN 55119
   ATTN: Ann Millerbernd
   Office: 651 736 3139
   Fax: 651 737 1619
   ammillerbernd1@mmm.com

There are also masks owned by PPE SOLUTIONS in a warehouse in Hong Kong, which PPE SOLUTIONS agrees to transport to a private destruction facility in Hong Kong for destruction within 75 days of the Effective Date. PPE SOLUTIONS shall obtain

documentation from the private destriction facility certifying the destruction of the masks, which PPE SOLUTIONS shall provide to 3M through counsel.

Not withstanding the foregoing provision, PPE SOLUTIONS may preserve one carton of masks from each location in which they reside. These cartons will be preserved solely for evidentiary purposes in the case styled *THI Medical, S.A.C. v. PPE Solutions Group, LLC, et al.* No. 1:21-cv-03979 (LGS), pending in the Southern District of New York.

In addition to the masks specifically mentioned above in Paragraph 3 herein, PPE SOLUTIONS owned products labeled 3M N95 Respirators that were a subject of the Litigation and being stored in a warehouse in New Jersey, located at 630 New County Road, Secaucus, NJ 07094 (the "New Jersey Warehouse"). 3M alleged in its complaint in the Litigation that these products labeled 3M N95 Respirators were counterfeit.

Specifically, the products at the New Jersey Warehouse included 55,200 masks (115 cartons, each with 480 masks) bearing lot code B20245. Upon identification of the lot number by PPE SOLUTIONS, it was determined by 3M that the lot code (B20245) corresponded with known counterfeit product bearing the same lot code. This lot code for known counterfeit product was included in public notices 3M published advising purchasers of the counterfeit nature of masks from said lot numbers.

At some point following the filing of the Litigation, the products labeled 3M N95 Respirators owned by PPE SOLUTIONS and being stored in the New Jersey Warehouse were deemed "abandoned" and upon information and belief, were sold to an unknown third party by New Jersey Warehouse personnel.

PPE SOLUTIONS represents that it no longer has custody or control over the products labeled 3M N95 Respirators and bearing lot code B20245 that were owned by PPE SOLUTIONS and being stored in New Jersey Warehouse, and that it will not seek to re-acquire or resell said masks. In addition to the foregoing, PPE SOLUTIONS agrees to cooperate with 3M as reasonably necessary to establish the counterfeit nature of the products labeled 3M N95 Respirators that were owned by PPE SOLUTIONS and being stored in "New Jersey Warehouse" in any action 3M my take against the New Jersey Warehouse for the sale of counterfeit products.

4. <u>Resolution of Claims/Consent Judgment and Permanent Injunction.</u> Simultaneously with the Execution of this Agreement, the Parties shall also execute a Consent Judgment and Permanent Injunction in the form attached hereto as **Exhibit A** ("Consent Judgment). PPE SOLUTIONS agrees that it will not challenge or oppose entry of the Consent Judgment or appeal the Consent Judgment, and that PPE SOLUTIONS will be deemed to have waived any and all defenses to the Consent Judgment. Entry of the Consent Judgment resolves the LAWSUIT and is binding and preclusive with respect to the Parties. Within five (5) business days of completion of the Settlement Payment from PPE SOLUTIONS to 3M, referenced in paragraph 5 below, counsel for 3M shall file with the Court the Consent Judgment and Permanent Injunction in the form attached hereto as **Exhibit A.**

5. <u>The Settlement Payment and Waiver of Attorney's Fees</u>. In exchange for the covenants, releases, and entry of a Consent Judgment and Permanent Injunction provided for in this Agreement, PPE SOLUTIONS will pay the sum of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) to 3M (hereafter the "Settlement Payment"). The Settlement Payment required above shall be made to 3M through wire transfers to 3M's following account:

| | |
|---|---|
| Bank: | JPMorganChase |
| | 1 Chase Manhattan Plaza |
| | New York, NY  10081 |
| ABA: | 021000021 |
| SWIFT Address: | CHASUS33 |
| Account: | 777180811 |
| Beneficiary: | 3M Company |

The Settlement Payment shall be made by said wire transfers in increments of Five Thousand Dollars and Zero Cents ($5,000.00) over a period of ten (10) months on the following schedule:

$5,000.00 DUE:  July 15, 2022
$5,000.00 DUE:  September 15, 2022
$5,000.00 DUE:  November 15, 2022
$5,000.00 DUE:  January 15, 2023
$5,000.00 DUE:  March 15, 2023

Completion of the Settlement Payment from PPE SOLUTIONS to 3M shall result in resolution and waiver of all remaining claims for damages, costs, expenses and attorney's fees, taxable and otherwise, incurred in or arising out of the facts related to this specific investigation that are known as of the Effective Date, prosecution or defense of any matter released by this Agreement. Each Party shall bear his, her or its own attorney's fees incurred to date in the legal disputes between them and in connection with this settlement, and no Party shall have any responsibility for payment of any other Party's attorney's fees.

In the event PPE SOLUTIONS fails to make any of the wire transfers in the amount(s) or on the date(s) set forth above, PPE SOLUTIONS shall be liable for a $100 penalty for each day that the wire transfer is late.  3M shall provide notice and an opportunity to cure the missed wire transfer within 30 days.  Additionally, PPE SOLUTIONS shall be subject to liquidated damages in the amount of all sums due and owing at the time of default.

6. <u>Entire Agreement</u>.  This document embodies the entire terms and conditions of this Agreement, and each Party acknowledges that it has not relied upon any warranties, representations or promises, except as set forth expressly in this Agreement.  Any prior correspondence, memoranda or agreements, whether oral or written, are superseded in total by this Agreement.  All words, phrases, sentences and paragraphs, including the recitals hereto, are material to this Agreement.  This Agreement may be executed in counterparts,

and all executed counterparts are duplicate originals equally admissible in evidence. Any modification of this Agreement requires a writing signed by all Parties.

7.  No Duress; Full and Independent Knowledge.  Each Party acknowledges and represents to the other that: (i) it has received or had the opportunity to receive independent legal advice from counsel of its own selection regarding the provisions of this Agreement and its legal effect; (ii) it fully understands the facts and has been fully informed as to its legal rights and obligations under this Agreement; and (iii) the Agreement is being entered into and signed by each Party knowingly, freely, and voluntarily, after having received, or having had the opportunity to receive, such legal advice and with such knowledge.

8.  Governing Law and Forum Selection.  This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of New York, without giving effect to its conflicts of law principles. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be brought in the federal court of the Southern District of New York, and each Party expressly consents to the personal jurisdiction of, and exclusive venue in, the state or federal courts of New York for any such controversy or claim.

9.  No Waiver.  Any failure to enforce any terms or conditions of this Agreement by any of the Parties shall not constitute a waiver of any right to assert any of the terms and conditions of this Agreement.

10. Authority of Signing Parties and Representatives.  Each of the signatories to this Agreement warrants that he or she is fully authorized to enter into the terms and conditions stated herein, to execute the Agreement and to legally bind the Party on whose behalf he or she is signing.

11. Binding Effect.  This Agreement shall be legally binding upon the parties' respective assigns, successors, heirs, principals, officers, directors, employees, parent companies, and subsidiary companies.

12. Severability.  In the event any of the terms, conditions or covenants contained in this Agreement are held to be illegal, unenforceable and/or invalid by any court of competent jurisdiction, then any such term, condition or covenant shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Any such invalidity shall not affect any other terms, conditions or covenants contained herein which shall remain in full force and effect.

13. Counterparts.  This Agreement may be signed in counterparts and shall be binding upon the Parties after all necessary signatures are obtained, as if all such signatures appeared on one original.

14. Ambiguity; Construction.  This Agreement is the result of mutual negotiation, and any rule of construction to the effect that any ambiguities in this Agreement are to be resolved against the drafting Party, including but not limited to New York law or any other

statutes, legal decisions or common law principles of similar effect, shall have no application in the interpretation of this Agreement. Whenever the context so requires in this Agreement, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a joint venture, a trust, an estate, or any other entity. Captions and paragraph headings used herein are for convenience only and are not a part of this Agreement. Such headings shall not be used in construing this Agreement.

15. Confidentiality; Public Statements. 3M retains the right to issue a press release, provided no individual persons are named. 3M and PPE SOLUTIONS shall treat all terms of this Agreement as confidential and shall not disclose any terms or information herein to any third party, except as to the terms and information already publicly disclosed in the Consent Judgment and Permanent Injunction filed in the LAWSUIT. Notwithstanding the foregoing, a Party may discuss the subject matter with third parties in the following circumstances: (a) to the extent necessary to enforce intellectual property rights or to comply with a specific applicable law or the valid order of a court of competent jurisdiction, in which case the Party making the disclosure or communication shall notify the other Party in writing and shall seek confidential and proprietary treatment of the information; (b) as part of normal, reporting or review procedure to the respective Parties and of their directors, parent company, auditors and attorneys provided, however, that such persons or entities agree to be bound by the provisions of this paragraph; (c) to enforce its rights legally under this Agreement in a court of competent jurisdiction; (d) to discuss such information which is or becomes part of the public domain through disclosure other than by the non-disclosing Party; or statistical use of the facts of the case and the amount of the settlement for reporting on settlement totals and efforts to remove counterfeit products from the stream of commerce; or (e) statistical use of the facts of the case for reporting internally or publicly on efforts to remove counterfeit products from the stream of commerce, including general statements that the LAWSUIT was settled. Specific entities released by this Agreement also may review this Agreement and documents supporting it.

## MUTUAL RELEASE

16. Release by 3M. Except for the rights and obligations set forth herein, 3M does hereby remise, release, acquit, satisfy, and forever discharge PPE SOLUTIONS, and its respective personal representatives, agents, attorneys, heirs, and assigns, including without limitation John Park, Kyle Barnette, and JPJD2020 LLC, of and from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, damages, judgments, executions, claims and demands whatsoever, in law or in equity, disclosed by PPE SOLUTIONS and known to 3M as of the Effective Date and which 3M may have against PPE SOLUTIONS, its respective personal representatives, agents, attorneys, heirs, assigns, for, upon, or by reason of any matter, cause, or thing whatsoever from the Effective Date of this Agreement, for claims known or anticipated as of the Effective Date. Undisclosed acts and events occurring after the Effective Date, including but not limited to discovery of sales that have not been disclosed

by PPE SOLUTIONS or sales occurring after the execution of this Agreement are specifically not released.

17. <u>Release by PPE SOLUTIONS</u>. Except for the rights and obligations set forth herein, PPE SOLUTIONS does hereby remise, release, acquit, satisfy, and forever discharge 3M and its respective personal representatives, agents, attorneys, heirs, assigns, of and from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, damages, judgments, executions, claims and demands whatsoever, in law or in equity, known to PPE SOLUTIONS as of the Effective Date and may have against 3M, its respective personal representatives, agents, attorneys, heirs, assigns, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the Effective Date of this Agreement, for claims known or anticipated as of the Effective Date.

EACH OF THE UNDERSIGNED HAS CAREFULLY READ AND UNDERSTANDS THE CONTENTS OF THIS AGREEMENT.

EACH OF THE UNDERSIGNED HAS REVIEWED THE TERMS OF THIS AGREEMENT WITH HIS/HER/ITS ATTORNEY. IN SIGNING THIS AGREEMENT, EACH OF THE UNDERSIGNED IS RELYING ON ITS/HIS/HER OWN INVESTIGATION, JUDGMENT, BELIEF AND KNOWLEDGE AND THE ADVICE OF HIS/HER/ITS COUNSEL AND IS NOT RELYING ON ANY REPRESENTATIONS OR STATEMENTS MADE BY ANY OTHER PARTY OR COUNSEL FOR ANY OTHER PARTY TO THIS AGREEMENT.

**SIGNATURES:**

3M COMPANY, INC.

Dated May 31, 2022

_[signature]_
Authorized Signature

PPE SOLUTIONS, INC.

By: Kyle Barnette

PPE SOLUTIONS, INC.

Dated 5-25-22

_[signature]_
Authorized Signature